# United States Court of Appeals
## For the First Circuit

No. 04-9009

IN RE ROBERT LOUIS MARRAMA,

Debtor

ROBERT LOUIS MARRAMA,

Appellant,

v.

CITIZENS BANK OF MASSACHUSETTS AND
MARK G. DEGIACOMO, CHAPTER 7 TRUSTEE,

Appellees.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL

OF THE FIRST CIRCUIT

Before

Howard, <u>Circuit Judge</u>,

Cyr and Stahl, <u>Senior Circuit Judges</u>.

David G. Baker for appellant.
Mark G. DeGiamomo, with whom Olga L. Bogdanov and Murtha Cullina LLP were on brief for appellee Mark G. DeGiacomo.
Jack J. Mikels, Michael A. Wirtz, Janell E. DeGennaro, and Jack Mikels & Associates on brief for appellee Citizens Bank of Massachusetts.
Lynn F. Riley, with whom Gary Klein, Roddy, Klein & Ryan, and John Rao, National Consumer Law Center, were on brief for Amicus Curiae, National Association of Consumer Bankruptcy Attorneys.

October 31, 2005

**CYR, Senior Circuit Judge**.  Robert Louis Marrama appeals from the bankruptcy court order which rejected his petition to convert these proceedings from chapter 7 to chapter 13, based on its determination that Marrama had attempted to conceal assets from creditors.  We affirm.

## I

## BACKGROUND

In August 2002, Marrama transferred residential real estate in York, Maine, having an unencumbered value of $85,000, to a revocable spendthrift trust, for no consideration, and designated himself sole beneficiary and his girlfriend sole trustee.  Marrama's acknowledged intent was to protect the property from the claims of creditors.  Seven months later, he submitted a voluntary chapter 7 petition, together with a statement of financial affairs wherein he (i) disclosed that he was the Trust's beneficiary, (ii) listed the value of its res as zero, (iii) denied making any property transfers within one year preceding the filing of the chapter 7 petition, and (iv) asserted that the IRS owed him no tax refunds.[1]  Whereas, Marrama was due a tax refund exceeding $11,000.

---

[1]Moreover, in accompanying financial statements, Marrama claimed a homestead exemption in his Gloucester, Massachusetts residence.  In affirming the bankruptcy court finding that Marrama had acted in bad faith, the Bankruptcy Appellate Panel ("BAP") noted that the homestead exemption appeared invalid on its face, since Marrama simultaneously claimed to be residing in Maine and to have received rental income from the Massachusetts property since May 2003, thus contradicting his assertion that it was a "residence" eligible for exemption.  In the interim, however, the

-2-

In June 2003, the chapter 7 trustee questioned Marrama regarding these apparent discrepancies. Rather than responding, Marrama filed notice in the bankruptcy court, pursuant to Bankruptcy Code § 706(a), seeking to convert the chapter 7 case to a chapter 13 debt-restructuring proceeding, based upon his contention that, more recently, he had acquired additional rental income and gainful employment. The chapter 7 trustee opposed the conversion on the ground that Marrama intentionally failed to disclose in his schedules the preferential transfer of the Maine property into the trust some seven months prior to his chapter 7 petition, as well as his anticipated federal tax refund. The debtor contended that these misstatements and omissions were inadvertent.

Following a non-evidentiary hearing, the bankruptcy court refused to permit the conversion to chapter 13, on the ground that the deceptive statement of financial affairs demonstrated Marrama's "bad faith." Marrama appealed to the BAP, which affirmed. In re Marrama, 313 B.R. 525 (BAP 1st Cir. 2004).[2] The present appeal

---

bankruptcy court has ruled that the Marrama homestead exemption claim is valid, see In re Marrama, 307 B.R. 332, 338-39 (Bankr. D. Mass. 2004), hence we do not rely on this evidence in determining whether the bankruptcy court erred in finding bad faith.

[2]Following the Marrama appeal, the Maine property was sold, see In re Marrama, 316 B.R. 418, 421-22 (BAP 1st Cir. 2004) (holding that Marrama's power to revoke the trust became property of the chapter 7 estate, exercisable by the chapter 7 trustee), and Marrama was denied a chapter 7 discharge, Citizens Bank of Mass. v. Marrama (In re Marrama), No. 03-11987, 2005 WL 1106919, at *5 (D.

-3-

fails as well.

**II**

**<u>DISCUSSION</u>**

On an appeal from a BAP decision, we review <u>de</u> <u>novo</u> the legal determinations of the bankruptcy court, and its findings of fact for clear error. <u>See</u> <u>Brandt</u> v. <u>Repco Printers & Lithographics, Inc.</u> (<u>In re Healthco Int'l, Inc.</u>), 132 F.3d 104, 107-08 (1st Cir. 1997).

**A.   <u>Section 706(a) and "Bad Faith" Conversion</u>**

The initial issue on appeal is whether Bankruptcy Code § 706(a) confers any discretion upon the bankruptcy court to forfend against "bad faith" conversions to chapter 13, or the debtor has an "absolute" right to convert. Interpretation of subsection 706(a) presents a pure issue of law, engendering <u>de</u> <u>novo</u> review. <u>See</u> <u>HSBC Bank USA</u> v. <u>Branch</u> (<u>In re Bank of New England Corp.</u>), 364 F.3d 355, 361 (1st Cir.), <u>cert.</u> <u>denied</u>, 125 S. Ct. 318 (2004). Subsection 706(a) provides:

> The debtor <u>may</u> convert a case under this chapter [<u>viz.</u>, chapter 7] to a case under chapter 11, 12, or 13 of this title <u>at</u> <u>any</u> <u>time</u>, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a) (emphasis added). Thus, section 706 imposes two

---

Mass. May 9, 2005) (finding that Marrama had "intent to defraud" creditors, <u>see</u> Bankruptcy Code § 727(a)(2)).

plainly expressed limitations upon a debtor's right to convert: the debtor (i) must not previously have converted the case; and (ii) must meet the eligibility requirements for the chapter to which he intends to convert, see 11 U.S.C. § 706(d). With respect to a conversion to chapter 13, for example, the debtor must have a regular income, unsecured debts less than $307,675, and secured debts less than $922,975. See id. § 109(e).

As always, first we must inquire whether the plain language of subsection 706(a) resolves the interpretive issue, and, if so, its manifest meaning must control. See In re BankVest Capital Corp., 360 F.3d 291, 297 (1st Cir.), cert. denied, 124 S. Ct. 2874 (2004). At the outset it must be noted that subsection 706(a) is to be viewed in light of a fundamental canon of the Bankruptcy Code: a bankruptcy court sitting in equity is duty bound to take all reasonable steps to prevent a debtor from abusing or manipulating the bankruptcy process to undermine the essential purposes of the Bankruptcy Code, including the principle that all the debtor's assets are to be gathered and deployed in a bona fide effort to satisfy valid claims. See United States v. Mourad, 289 F.3d 174, 178 (1st Cir. 2002) (noting that Bankruptcy Code § 105(a) enables the bankruptcy court to "tak[e] any action or mak[e] any determination necessary or appropriate to . . . prevent an abuse of [the bankruptcy] process"). Whether or not the Bankruptcy Code § 105(a) anti-abuse provision alone would warrant the bankruptcy

-5-

court's decision to deny Marrama a subsection 706(a) conversion, that provision indeed looms large in determining whether Congress envisioned that subsection 706(a) be construed as withholding all discretion where the bankruptcy court is confronted with a patently abusive motion to convert:

> Those who seek the shelter of the bankruptcy code [must] not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."

Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (citation omitted). Absent plain language to the contrary in subsection 706(a), therefore, we would be loathe indeed to disregard such an overarching legislative policy.

Turning to the particular language utilized in subsection 706(a), we can discern no evidence that the Congress intended to override the presumptive power and responsibility of the bankruptcy court to weed out abuses of the bankruptcy process at any stage in the bankruptcy proceedings. Subsection 706(a) simply provides that the debtor "may" convert. The word "may" has at least two connotations. It can simply denote that a debtor has the option to convert, or not convert. On the other hand, "may" often suggests conditionality, signifying that the event or status described is in

no sense to be considered a foregone conclusion. Thus, the phrase "may convert" reasonably may suggest that the right to convert is merely presumptive, and may be exercised only if the debtor meets the preconditions for eligibility established in Bankruptcy Code § 109(e), or even then only in the absence of other exceptional circumstances. See In re Finney, 992 F.2d 43, 45 (4th Cir. 1993) (holding subsection 706(a) right not "absolute," but subject to bad-faith exception); Martin v. Martin (In re Martin), 880 F.2d 857, 859 (5th Cir. 1989); In re Kuntz, 233 B.R. 580, 585 (BAP 1st Cir. 1999). In other words, the debtor "may" succeed in an attempted conversion, but not necessarily in all conceivable instances.

Although Congress's mere use of the word "may" might not be conclusive in itself as to the existence or scope of the bankruptcy court's discretionary authority to deny a conversion, the statutory interpretation proffered by the trustee is bolstered as well by a comparison between Bankruptcy Code § 706(a) and § 1307(b), for example, which provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter." (Emphasis added.) Subsection 1307(b) demonstrates that Congress well understood how to draft statutory language which left no (or at least considerably less) discretion

in the bankruptcy court to deny a chapter 13 debtor's request.[2] The fact that subsection 706(a) contains no such imperative language strongly suggests that it confers a more restricted right upon the debtor, and that the bankruptcy court presumptively retains its discretionary prerogative to deny conversion in some circumstances. See <u>Citizens Awareness Network, Inc.</u> v. <u>United States</u>, 391 F.3d 338, 346 (1st Cir. 2004) ("Congress's use of differential language in various sections of the same statute is presumed to be intentional and deserves interpretive weight.").[3]

---

[2]Our comparative analysis of subsections 706(a) and 1307(b) should not be construed as endorsing any particular interpretation of the latter section, such as one which would preclude the bankruptcy court from exercising its discretion to refuse to dismiss the chapter 13 case upon debtor's request. That issue is not before us to decide. See, <u>e.g.</u>, <u>Sckolnick</u> v. <u>Harlow</u>, 820 F.2d 13, 15 (1st Cir. 1987) ("[C]hapter 13 proceedings are wholly voluntary, and are subject to dismissal at any time at the debtor's request."). For present purposes, it suffices to note that the phrase "shall dismiss" is unquestionably a comparatively stronger imperative than "may convert."

[3]The trustee points as well to Federal Rule of Bankruptcy Procedure 1017(f)(2), which requires that the debtor file a "motion" to convert under subsection 706(a), and to Rule 2002(a)(4), which requires that written notice of a hearing on such a motion be served 20 days prior to the hearing. The trustee argues that the fact that the debtor must file a "motion," rather than a mere "notice," suggests that the debtor's right to convert is conditional, not absolute. Ultimately, however, we find the applicability of Rules 1017(f)(2) and 2002(a)(4) inconclusive. Unquestionably, subsection 706(a) provides that the debtor's right to convert is at least conditioned upon some factual determinations, including the absence of any prior conversions to chapter 13, and the debtor's ability to meet the eligibility requirements to file a chapter 13 petition in the first instance, see 11 U.S.C. §§ 706(d); 109(e) (e.g., unsecured debts less than $307,675). Since parties in interest might contest such factual matters, at the very least the mere fact that the debtor must file

Similarly, use of the phrase "at any time" in subsection 706(a) simply means that the debtor may seek to convert at any time during the pendency of the bankruptcy case, or in other words, that no artificial time constraints should impede an election to convert. Obviously, however, the temporal permissiveness of the phrase "at any time" hardly equates to the more broad circumstantial permission which Congress could have conferred, for example, by employing a phrase such as "regardless of the circumstances." See In re Copper, 314 B.R. 628, 636-37 (BAP 6th Cir. 2004); In re Young, 269 B.R. 816, 822 (Bankr. W.D. Mo. 2001); In re Starkey, 179 B.R. 687, 692 (Bankr. N.D. Okla. 1995).

Marrama points to the second sentence in subsection 706(a), which provides that "[a]ny waiver of the right to convert a case under this subsection is unenforceable," as evidence that Congress intended that the debtor not be able to divest himself of the right to convert, even where he allegedly abuses the bankruptcy process. Once again, however, in context this sentence functions strictly as a consumer protection provision against adhesion contracts, whereby a debtor's creditors might be precluded from

a "motion" under § 706(a) hardly demonstrates that Congress necessarily envisioned that the bankruptcy court might also condition conversion upon the debtor's "good faith." See In re Croston, 313 B.R. 447, 452-53 (BAP 9th Cir. 2004). We would observe, however, that invocation of Rules 1017(f)(2) and 2002(a)(4) is in no sense incompatible with an interpretation which includes debtor "bad faith" among the conceivable contested matters to be addressed at a hearing.

attempting to prescribe a waiver of the debtor's right to convert to chapter 13 as a non-negotiable condition of its contractual agreements. See In re Copper, 314 B.R. at 637; cf. Bankruptcy Code § 522(e) (referring to a similarly-worded exemption waiver, which was made "unenforceable," as one "executed in favor of a creditor"). Subsection 706(a) contains no intimation that the debtor should be accorded protection against his own willful misconduct, such as an intentional abuse of the bankruptcy process. See In re Starkey, 179 B.R. at 692 (noting that such debtor misconduct is more akin to an "estoppel," than a "waiver").

In construing subsection 706(a), it is important to bear in mind that the bankruptcy court has unquestioned authority to dismiss a chapter 13 petition – as distinguished from converting the case to chapter 13 – based upon a showing of "bad faith" on the part of the debtor. See In re Cabral, 285 B.R. 563, 571-72 (BAP 1st Cir. 2002); see also In re Alt, 305 F.3d 413, 418-19 (6th Cir. 2002). We can discern neither a theoretical nor a practical reason that Congress would have chosen to treat a first-time motion to convert a chapter 7 case to chapter 13 under subsection 706(a) differently from the filing of a chapter 13 petition in the first instance.

The plain language of subsection 706(a) in no sense undermines the presumptive authority of the bankruptcy court to take reasonable steps to thwart debtor abuse of the bankruptcy

-10-

process. However, even assuming *arguendo* that subsection 706(a) were ambiguous, we would look to the statute's "historical context, its legislative history, and the underlying policies that animate its provisions." In re Weinstein, 272 F.3d 39, 48 (1st Cir. 2001); see In re LAN Tamers, Inc., 329 F.3d 204, 210 (1st Cir. 2003) (noting that court may rely upon legislative history to corroborate meaning derived from plain statutory language).

The present controversy over the meaning of subsection 706(a) is traceable not to the plain language of subsection 706(a), but largely to its legislative history, which describes the debtor's right to conversion as "absolute," or as a "matter of right":

> Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from Chapter 11 or 13 to Chapter 7, then the debtor does not have that right. The policy of the provisions is that the debtor should always be given the opportunity to repay his debts.

H.R. Rep. No. 95-595, at 380 (1977); S. Rep. No. 95-989, at 94 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5880.

The term "absolute" is problematic, if taken out of context, in that it implies that the debtor's conversion right is unconditional. We are not at liberty to take the term so literally, however, since subsections 706(a) and 109(e) make clear that numerous conditions exist which might defeat the debtor's

-11-

motion to convert.  See 9 Lawrence W. King, Collier on Bankruptcy ¶ 1017.05[1], at 1017-9 to 1017-10 (1998) ("Section 706(a) permits the debtor, as a matter of right, to convert a liquidation case to a case under chapter 11, 12, or 13 if the case has not previously been converted from one of those chapters to chapter 7.") (emphasis added).   Therefore, in context the term "absolute" likely constitutes a recognition either that the debtor may convert once as a matter of right, but may not engage in successive conversions, or that the debtor's right to conversion cannot be waived by contract.

It is the pronounced policy of subsection 706(a) "that the debtor should always be given the opportunity to repay his debts," H.R. Rep. No. 95-595, at 380, thus should be given one chance to effectuate a viable chapter 13 plan.  It is plainly implicit in this legislative observation, however, that such an opportunity is to be accorded only to honest debtors.  See In re Spencer, 137 B.R. 506, 512 (Bankr. N.D. Okla. 1992) ("Where conversion to [chapter] 13 amounts to an attempt to escape debts rather than to repay them, the reason for the rule ceases – and there the rule ceases also."); see also In re Marcakis, 254 B.R. 77, 81 (Bankr. E.D.N.Y. 2000).  Nothing in the legislative history remotely negates nor undermines the overarching principle that the bankruptcy courts are duty bound to take all reasonable steps to preclude debtors from abusing or manipulating the bankruptcy

-12-

process in order to undermine the essential purposes of the Bankruptcy Code.

Marrama advances two additional policy-related arguments. First, he notes the supposed irony that the bankruptcy reform legislation recently enacted by Congress aims to encourage more debtors to file chapter 13 petitions and thus undertake voluntary repayment of their debts, whereas the bankruptcy court here prematurely short-circuited his nascent attempt to do so. See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, § 215, 119 Stat. 23 (2005). This argument is unpersuasive. The language of subsection 706(a) remains unchanged under the new act, and Marrama has not suggested that there is any other specific Bankruptcy Code amendment which would affect our interpretation of subsection 706(a). Rather, the purport of the bankruptcy reform legislation is to compel some debtors presently eligible to file chapter 7 debt-liquidation cases to opt for the less debtor-friendly, debt-restructuring chapter 13 regime, thus making it impossible for those debtors to obtain an absolute discharge of their debts. See In re Hill, 328 B.R. 490, 500 (Bankr. S.D. Tex. 2005) (discussing reform bill). A legislative policy aimed at encouraging able debtors to undertake the voluntary repayment of their lawful credit obligations plainly is not served where the bankruptcy court has determined, as a threshold finding of fact, that the debtor is utilizing his subsection 706(a)

conversion rights to advance an ongoing scheme to retain his non-exempt assets from bona fide creditors.

Finally, Marrama notes that the Code accords the bankruptcy court discretion to reconvert a chapter 13 case to chapter 7 at a subsequent stage in the proceedings where the debtor has acted in "bad faith," see In re Copper, 314 B.R. at 365, and therefore that subsection 706(a) should not be construed as authorizing a largely duplicative remedy. We disagree. First, it would ill serve general policies aimed at promoting the efficient administration of bankruptcy cases to insist that a bankruptcy court – already confronted with clear evidence of a debtor's bad faith – must indulge in the technical formality of converting the chapter 7 case to chapter 13, knowing full well that eventually the case must be reconverted by reason of that same evidence of bad faith. See Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1145 (1st Cir. 1992) (noting "the important policy favoring efficient bankruptcy administration"). Absent some plausible policy justification for such pointless spinning of judicial wheels, we cannot construe subsection 706(a) as requiring it.

Moreover, these two remedies are neither inherently nor necessarily duplicative. Thus, for example, the bankruptcy court could invoke its power to reconvert a case, even though the debtor did not submit the subsection 706(a) conversion motion in bad faith, but subsequent to the conversion the debtor engaged in bad-

-14-

faith conduct which justified reconversion to chapter 7. Congress may well have envisioned – altogether reasonably – that the bankruptcy court could nip in the bud manipulative conduct on the part of a "bad faith" debtor at the moment of conversion, pursuant to subsection § 706(a), rather than only after the case has been converted.

For all these reasons, we conclude that subsection 706(a) permits the bankruptcy court to deny a chapter 13 debtor's subsection 706(a) motion to convert where the court determines that the debtor engaged in bad faith conduct. We now turn to an assessment of the determination of bad faith made by the bankruptcy court.

## B. The Finding of "Bad Faith"

Marrama maintains that the bankruptcy court erred in finding that he acted in "bad faith" by attempting to conceal assets from creditors by means of misrepresentations and material omissions of fact in his chapter 7 schedules. Marrama contends that (i) the schedules merely failed to disclose his recent transfer of the Maine property into the trust, yet did not conceal the existence of the property itself; (ii) the former omission was merely the result of scrivener error, with no intent to conceal; (iii) the statement, in Schedule B – that the res property had no value – was not false, notwithstanding its stated market value of $85,000, in that Marrama harbored a good-faith belief that the

-15-

"spendthrift" nature of the trust prevented it from becoming property of the chapter 7 estate in the first instance; and (iv) the bankruptcy court determination is not supported by competent evidence, since the court did not convene an evidentiary hearing.

As "good faith" is a fact-intensive determination to be made on a case-by-case basis, we review the instant finding as to "bad faith" for clear error only. See In re Sullivan, 326 B.R. 204, 212 (BAP 1st Cir. 2005). A finding of fact cannot constitute clear error where competent record evidence supports it, nor is a reversal in order unless the court is "left with the definite and firm conviction that a mistake has been committed." In re Hannigan, 409 F.3d 480, 482 (1st Cir. 2005) (citation omitted). In assessing the totality of the circumstances, the bankruptcy court may consider, inter alia, (i) the accuracy of the debtor's financial statements; (ii) any other attempts by the debtor to mislead the bankruptcy court or manipulate the bankruptcy process; (iii) the type of debt sought to be discharged; (iv) whether the debt is dischargeable in chapter 7; and (v) the debtor's motivation in seeking to convert to chapter 13. See Sullivan, 326 B.R. at 212.

As the bankruptcy court determination that Marrama engaged in "bad faith" conduct is amply supported by the record, there can have been no clear error. The bankruptcy court is entitled to demand utmost good faith and honesty from debtors in the preparation of their schedules and statements of affairs. See

Hannigan, 409 F.3d at 483. "The successful functioning of the bankruptcy [code] hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." In re Tully, 818 F.2d at 110. Thus, concealment of assets is a long-recognized ground for rejecting a motion to convert a case. See, e.g., In re Kuntz, 233 B.R. at 583 (collecting cases); In re Porter, 276 B.R. 32, 37-38 (Bankr. D. Mass. 2002) (denying debtor's motion to convert, due to failure to disclose transfer of assets within one year of filing bankruptcy petition).

The instant case comports in all material respects with the classic profile of playing fast and loose with the bankruptcy process. First, Marrama engaged in prepetition transfers of valuable property with the acknowledged intention of insulating the transfers from creditors, submitted a chapter 7 petition, then omitted to mention these same assets and transfers in the bankruptcy schedules, presumably in the expectation that the chapter 7 trustee would not discover their concealment. As the effort at camouflage failed, Marrama moved to convert the case to chapter 13, predicated upon the uncorroborated assertion that he was receiving regular income sufficient to entitle him to protection under chapter 13. Conveniently, the instant conversion (which Marrama characterizes as an "absolute" matter of right impregnable to challenge either by the trustee or the bankruptcy court) would divest the chapter 7 trustee of any authority to act

-17-

in behalf of the estate to safeguard its assets.  See Bankruptcy Code § 348(e), 11 U.S.C. § 348(e).  Thus, in the event the debtor were to succeed in securing confirmation of a chapter 13 plan, he could reacquire his interest in "property of the estate," as well as the concealed property.

Confronted with the profile presented by the instant case, the bankruptcy court readily could conclude that the Marrama disclosures demonstrated abundant indicia of intentional concealment.  Question 10 unambiguously required Marrama to "[l]ist all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case."  Marrama responded: "None."  The contention by counsel that Marrama simply forgot to include the transfer of the Maine residence – which occurred a mere seven months before the chapter 7 petition filing – severely strains credulity.  Not only was the Maine residence among Marrama's most valuable assets ($85,000), but Marrama conceded at the creditors' meeting that the transfer was made with the specific intent to avoid the claims of his creditors.  See, e.g., In re Weeden, 306 B.R. 449, 459 (Bankr. W.D.N.Y. 2004) (discrediting similar excuse by "intelligent, educated and financially sophisticated individual" for failure to disclose in Question 10 response a transfer proximate in time to the filing of the

bankruptcy petition); In re Carlson, 231 B.R. 640, 656 (Bankr. N.D. Ill. 1999) (inferring fraudulent concealment where omitted transfer involved property transferred for no consideration and with specific intent to avoid creditors' claims against it). Further, by listing the value of the transferred property (or the trust res) as zero, Marrama made it less likely that the trustee would discover the preferential transfer, inasmuch as Marrama had made it appear that the trust may have never been funded.

The contention that Marrama honestly disclosed that the trust property value was zero strains credulity as well. Schedule B explicitly requires that the "current market value of debtor's interest in the property" be listed, rather than its value to the bankrupt estate.[4]

Finally, we reject the contention that, absent an evidentiary hearing, there was insufficient record support for the "bad faith" finding by the bankruptcy court. Marrama neither requested an evidentiary hearing, nor has he yet identified what additional material evidence could or would have been adduced at

_____

[4]We note as well that Marrama's asserted legal basis for stating that the Maine property never became part of the bankrupt estate is highly questionable. See, e.g., Aylward v. Landry (In re Landry), 226 B.R. 507, 510 (Bankr. D. Mass. 2002) ("[A] spendthrift trust is ineffective against creditors if the settlor creates a trust for the settlor's own benefit and retains the power to amend, revoke or invade the principal of the trust."); see also In re Marrama, 316 B.R. at 421 (noting that, under Maine law, settlor retains power to revoke trust at any time, and this revocation power vests in the chapter 7 trustee).

such a hearing.  See Cabral, 285 B.R. at 577 (affirming, despite lack of evidentiary hearing on ground that "[n]either counsel to the Debtor nor the Trustee indicated that there were facts in dispute or requested an opportunity to present evidence at the hearing").

**Affirmed**.