**In re Scott Edward BALDASSARO, Debtor.**

**No. 06–10059 JMD.**

United States Bankruptcy Court, D. New Hampshire.

Feb. 24, 2006.

Grenville Clark III, Esq., Gray Wendell & Clark P.C., Manchester, NH, for Debtor.

Deirdre M. Keady, Esq., Harmon Law Offices, P.C., Newton Highlands, MA, for Mortgage Electronic Registration Systems, Inc.

## MEMORANDUM OPINION

J. MICHAEL DEASY, Bankruptcy Judge.

### I. INTRODUCTION

Scott Edward Baldassaro (the "Debtor") filed a Motion for Continuation of the Automatic Stay (Doc. No. 8) (the "Motion") pursuant to § 362(c)(3) of the Bankruptcy Code.[1] This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (Di-Clerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### II. BACKGROUND

The Debtor filed a petition under chapter 13 of the Bankruptcy Code on January 25, 2006 (the "Petition Date"). Pursuant to the provisions of the Bankruptcy Code, the filing of the petition operated as a stay, applicable to all entities, of certain acts specified in § 362(a) of the Bankruptcy Code. The filing of the petition caused the clerk of the Court to open this case (the "2006 Case"). The Debtor had previously filed a chapter 13 petition with this Court on April 20, 2005 (Bk. No. 05–11582–MWV) (the "2005 Case"). In the 2005 Case, the Court had entered orders conditioning the automatic stay against Mortgage Electronic Registration Systems, Inc.

---

1. In this opinion the terms "Bankruptcy Code," "Code," and "§ " shall mean title 11 of United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8.

("MERS") and granting relief from the automatic stay in favor of Ashley Place Condominium Unit Owners Association, Capital One Auto Finance, and MERS. No chapter 13 plan was confirmed and the 2005 Case was dismissed effective December 9, 2005.

Section 302 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("BAPCPA"), amended § 362 of the Bankruptcy Code to discourage bad faith repeat filings of bankruptcy petitions. BAPCPA added § 362(c)(3) to the Bankruptcy Code and made its provisions applicable to all cases filed on or after October 17, 2005. The provisions of BAPCPA apply to the 2006 Case. Section 362(c)(3)(A) provides for a limitation on the extent and duration of the automatic stay if the Debtor had a case pending within the preceding year that was dismissed. The Debtor concedes that the provisions of this subsection apply to him.[2] Section 362(c)(3)(A) terminates the automatic stay imposed by § 362(a) to the extent stated in the statute on the thirtieth day after the filing of the 2006 Case, unless a party in interest files a motion for a continuation of the stay against one or more creditors and demonstrates that the filing of the 2006 Case was made in good faith with respect to the creditors to be stayed. 11 U.S.C. § 362(c)(3)(B). Accordingly, as provided in § 362(c)(3)(A), absent an extension of the automatic stay by the Court, the stay will terminate on February 24, 2006.

The Debtor claims that the 2006 Case was filed in good faith in order to prevent the loss of his family's residence. The Motion was filed two days after the Petition Date and was served on all creditors. MERS filed an objection on February 7, 2006. No other party in interest filed a response or objection. MERS contends that the payment history of the Debtor with respect to its mortgage debt demonstrates a long term inability to meet his financial obligations and that the 2006 Case was not filed in good faith. The Court held an evidentiary hearing on the Motion on February 15, 2006.

## III. DISCUSSION

### A. Is § 362(c)(3) Applicable to the 2006 Case?

This is the first contested motion of its kind considered by this Court under BAPCPA. As a threshold issue, the Court notes that the language in new § 362(c)(3) is very poorly written.[3] It has been noted that the provisions of this new subsection "are, at best, particularly difficult to parse and, at worst, virtually incoherent." *In re Charles*, 332 B.R. 538, 541 (Bankr.S.D.Tex. 2005). Judge Thomas Small, former chair of the Advisory Committee on Bankruptcy Rules, has stated that "[i]n an Act in which head-scratching opportunities abound for both attorneys and judges alike, § 362(c)(3)(A) stands out." *In re Paschal*, 337 B.R. 274, 276–78 (Bankr.E.D.N.C. 2006). This Court likewise finds the provisions of § 362(c)(3) to be neither consistent nor coherent. Section 362(c)(3)(A) provides:

if a single or joint case is filed by or against debtor who is an individual in a

---

**2.** The applicability of § 362(c)(3)(A) to this case, or most cases, is not clear from the plain language of that subsection. However, as discussed below, the Court agrees that Congress intended the subsection to apply in cases similar to the 2006 Case.

**3.** The Court finds it difficult to believe that lawyers retained by either the private interests that lobbied for the passage of BAPCPA or any staff attorneys for the various Congressional committees with oversight over BAPCPA could actually produce such a bad work product.

case under chapter 7, 11, or 13, and if a single or joint case was pending within the preceding 1–year period but was dismissed . . . the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after filing of the later case.

The quality of the drafting is reflected in the analysis of § 362(c)(3)(A) by Judge Small:

Parsing this language, the court first notes that a "case" is not filed: A petition is filed, after which a case is opened. Next, the statute directs that the case must be filed by "[a] debtor who *is* an individual in a case . . . ." For a debtor to be an individual in a case in the present tense, a case must still be pending. Thus, this section literally applies only to a debtor who has a chapter 7, 11 or 13 case open when a new petition is filed by or against that individual. Finally, a single or joint case of the debtor had to be "pending within the preceding 1–year period but was dismissed." Taken all together, the section only applies to individuals who have had three cases pending in one calendar year: one case that has been dismissed, one case that is still pending when the petition at issue is filed, and the new case that is before the court for determination.

*Id.* As noted by Judge Small, such circumstances are not likely to occur. *Id.* at 278–79.

The automatic stay in the 2006 Case arose under § 362(a) as a result of the filing of a "petition" by the Debtor. The Debtor did not file a "case." Accordingly, under a strict construction of the plain language of § 362(c)(3)(A), the limitation on the extent or duration of the automatic stay would not apply in this case. Howev-er, strictly construing the plain language of the statute to distinguish between the filing of a "petition" operating as a stay under § 362(a) and the filing of a "case" triggering the limitation of such a stay would render § 362(c)(3)(A) completely meaningless. Such a result would be absurd and possibly contrary to what Congress intended.

The starting point in discerning congressional intent is the language of the statute itself. *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); *Duncan v. Walker,* 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). If the "statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' In such cases, the intention of the drafters, rather than the strict language, controls." *Id.* at 242, 109 S.Ct. 1026 (internal citation omitted). Since the statutory language of § 362(c)(3) is not consistent and coherent, and a strict reading of the plain language would lead to an absurd result, the Court must look to the legislative history. Congress stated its intent to amend "section 362(c) of the Bankruptcy Code to terminate the automatic stay within 30 days in a chapter 7, 11, or 13 case filed by or against an individual if such individual was a debtor in a previously dismissed case pending within the preceding year." E–2 *Collier on Bankruptcy* App. Pt. 10(b) at App. Pt. 10–333 (15th rev. ed.2005). Because the legislative history clearly reflects congressional intent to limit the duration of the automat-

ic stay in cases similar to the 2006 Case, the Court shall apply the subsection to this case, notwithstanding the plain language of the statute.

## B. Application of § 362(c)(3) to the 2006 Case

Since this is a case of first impression in this district, the Court has examined the statutory language carefully and has reviewed many reported and unreported decisions by other bankruptcy courts. Even looking beyond the inconsistent and incoherent language in § 362(c)(3) regarding the applicability of the subsection to a particular case, the effect of this subsection on the extent and duration of the automatic stay imposed by § 362(a) is not clear and the standards for extending whatever limitations may be imposed by § 362(c)(3) are not articulated.

### 1. Nature of the Limitation on the Automatic Stay

Section 362(c)(3)(A) acts to terminate the stay on the thirtieth day after the filing of a later case "with respect to any *action taken* with respect to a debt or property securing such debt." 11 U.S.C. § 362(c)(3)(A) (emphasis added). In a thoughtful opinion, Judge Small examined the language of § 362(c)(3)(A) in the context of § 362 as a whole. *Paschal,* 337 B.R. 274. Based upon the language in § 362(c)(1) and (c)(2) he found that the term "act" is used quite differently from the term "action taken" in § 362(c)(3)(A). *Id.* at 279. He found that the word "act" as used in various subsections of § 362(a) is used in the broadest possible sense. *Id.* at 279–80. However, the term "action" as used in § 362(a)(1), various subsections of § 362(b), and in § 362(d) contemplates a more limited prohibition against only formal judicial, administrative, or similar activities. *Id.* "Furthermore, the action with

respect to which the stay [under § 362(c)(3)(A)] terminates is an 'action taken,' which means an action in the past, prior to the filing of the debtor's bankruptcy petition." *Id.*

Therefore, if there were no "actions taken" prior to the commencement of the 2006 Case, there would be nothing to which the limitation of the automatic stay would apply and the question of extending the stay under § 362(c)(3)(B) would not arise. At the evidentiary hearing, the Debtor agreed that the power of sale mortgage foreclosure proceeding, commenced by MERS after dismissal of the 2005 Case and before the commencement of the 2006 Case, was an "action taken" within the meaning of the statute. Accordingly, the Court shall decide this matter on that basis without determining the meaning of the term "action taken" in the statute.

### 2. Extent of the Limitation on the Automatic Stay

Section 362 of the Bankruptcy Code expressly distinguishes between the stay of acts or actions against property of the estate and acts or actions against a debtor. For example, § 362(a)(2) prohibits the enforcement of a prepetition judgment against "the debtor or property of the estate," while § 362(b)(2)(B) permits the collection of a domestic support obligation from property that is not property of the estate. Section 362(b)(2)(A)(iv) provides that the filing of a bankruptcy petition does not operate as a stay against the commencement or continuation of a civil action for the dissolution of the debtor's marriage, "except to the extent that such proceeding seeks to determine the division of property that is property of the estate." Similarly, the Bankruptcy Code has different provisions for determining when, absent an order of the bankruptcy court or other statutory conditions, a stay of acts

against property of the estate terminates and when the stay of acts against a debtor terminate. 11 U.S.C. § 362(c)(1) (providing that the stay against acts against property of the estate continues until the property is no longer property of the estate); 11 U.S.C. § 362(c)(2) (providing that the stay of acts against the debtor terminates at the time the case is closed, dismissed, or an individual debtor is granted or denied a discharge). The Bankruptcy Code imposes different conditions for the bankruptcy court to terminate, annul, or modify a stay. 11 U.S.C. § 362(d)(1) (providing that the stay of act against the debtor may be terminated for cause, including the lack of adequate protection); 11 U.S.C. § 362(d)(2) (providing that the stay of an act against property may be terminated if the debtor does not have equity in the property and the property is not necessary to an effective reorganization).

■ The language of § 362(c)(3)(A) expressly provides that if the subsection applies in a particular case, the stay "shall terminate with respect to the debtor." If the stay terminates with respect to the debtor, does it also terminate with respect to any property that is property of the estate? Interpreting the words "shall terminate with respect to the debtor" to mean terminating the stay as to both the debtor and property of the estate could render the distinction in other subsections of § 362 superfluous. Such an interpretation would not be favored. *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

At least one bankruptcy court has held that § 362(c)(3)(A) does not limit or terminate the automatic stay of acts or actions against property of the estate. *In re Johnson*, 335 B.R. 805, 806 (Bankr. W.D.Tenn.2006) (stating that "the plain language of § 362(c)(3)(A) dictates that the 30-day time limit only applies to 'debts' or

'property of the debtor' and not to 'property of the estate'"). Another bankruptcy court recognized the question but was able to resolve the matter before it without deciding whether § 362(c)(3)(A) applies to the automatic stay of acts or actions against property of the estate. *Paschal*, 337 B.R. at 280–81 (indicating that whether § 362(c)(3)(A) operates to lift the stay with respect to "action taken" against property of the estate is an interesting question that need not be decided given the court's ruling).

The Debtor contends that § 362(c)(3)(A) does not affect the stay of "action taken" against property of the estate. However, if the Debtor is able to establish grounds for the continuation of the stay under § 362(c)(3)(B), then the question regarding the applicability of § 362(c)(3)(A) to the stay of action taken against property of the estate, while interesting, will not need to be decided by this Court in this case.

### 3. Good Faith under § 362(c)(3)

In the Motion, the Debtor seeks an extension of the automatic stay as to MERS and all other creditors to the extent that § 362(c)(3)(A) acts to limit or terminate it. The extension of the automatic stay is governed by § 362(c)(3)(B) which provides:

a. on motion of a party in interest, after notice and a hearing completed before the expiration of the 30–day period,

b. the court may extend the stay as to any or all creditors (subject to such conditions or limitations as the court may impose),

c. only if the movant demonstrates that the filing of the later case is in good faith as to the creditors to be stayed.

Therefore, the issue under § 362(c)(3)(B) is whether the later case was filed in good

faith with respect to the creditors to be stayed.

A rebuttable presumption that a later case is not filed in good faith arises by statute under § 362(c)(3)(C), which provides:

for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)

(i) as to all creditors, if

(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1–year period;

(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1–year period, after the debtor failed to

(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

(bb) provide adequate protection as ordered by the court; or

(cc) perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded

(aa) if a case under chapter 7, with a discharge; or

(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor.

■ If the Court finds that a later case is "presumptively filed not in good faith" under § 362(c)(3)(C), the presumption must be rebutted by clear and convincing evidence. *In re Kurtzahn*, 337 B.R. 356, 363–64 (Bankr.D.Minn.2006); *In re Collins*, 335 B.R. 646, 651 (Bankr.S.D.Tex. 2005). In this case, the Debtor concedes that the 2006 Case was presumptively filed not in good faith as to MERS, Ashley Place Condominium Unit Owners Association, and Capital One Auto Finance because each of them had sought and received relief from the automatic stay in the 2005 Case and, therefore, the rebuttable presumption arises under § 362(c)(3)(C)(ii). The Debtor contends that the presumption does not arise as to all creditors under § 362(c)(3)(C)(i). MERS does not disagree and the Court finds that the rebuttable presumption does not arise in the 2006 Case as to all creditors pursuant to § 362(c)(3)(C)(i).

■ Once the rebuttable presumption arises, an extension of any stay under § 362(c)(3)(B) may only be considered by the Court if the Debtor is able to rebut the presumption with clear and convincing evidence. However, rebutting the presumption under § 362(c)(3)(C) or establishing good faith under § 362(C)(3)(B) is only the first step in a two step process. *In re Charles*, 334 B.R. 207, 223 (Bankr.S.D.Tex. 2005) (explaining that a debtor's good faith may authorize an extension of the stay, but

the statute does not mandate that the bankruptcy court extend the stay). Once good faith is established, the movant must next establish, by a preponderance of the evidence, why the Court should exercise its discretion to extend the stay. Responding parties may also seek to establish conditions or limitations that the bankruptcy court should impose on any such extension.

The concept of good faith is not defined in the Bankruptcy Code. "In a clumsy and roundabout way, § 362(c)(3)(C) contains the Bankruptcy Code's very first textual essay at defining the concept of good faith, or at least partially outlining it." *Kurtzahn*, 337 B.R. at 363–64 (*citing* Lisa A. Napoli, *The Not–So–Automatic Stay: Legislative Changes to the Automatic Stay in a Case Filed by or Against an Individual Debtor*, 79 Am. Bankr.L.J. 749, 768 (2005)). "The statute does so in a fragmentary and incomplete manner, however, by the use of exemplars of exclusion: if certain extrinsic historical or current circumstances are present, the current case is presumed to have been filed 'not in good faith.' The Act did not create an express definition of 'good faith' *in se;* nor does it furnish any textual guidance for just how to prove good faith in filing, whether in rebuttal of the presumption or to prove it in the first instance in the absence of the presumption." *Id.* Therefore, the Court must look to the decisions on good faith under the pre-BAPCPA Bankruptcy Code. *Id.; In re Montoya*, 333 B.R. 449, 457 (Bankr.D.Utah 2005) (*citing Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986)).

 In the First Circuit, the totality of the circumstances test is applied to determine whether a chapter 13 petition has been filed in good faith. *Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 430 F.3d 474, 482 (1st Cir.

2005); *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (1st Cir. BAP 2005). In applying the totality of the circumstances test, "bankruptcy courts generally consider the following factors: (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief." *Sullivan,* 326 B.R. at 212. The totality of circumstances test to determine good faith is a fact intensive determination based upon a multi-faceted analysis applied on a case-by-case basis. *Marrama,* 430 F.3d at 482.

However, should the same factors used to determine whether a chapter 13 petition has been filed in good faith for purposes of § 1307 be used to determine good faith purposes of § 362(c)(3)? Do the provisions of BAPCPA render the pre-BAPCPA factors for determining good faith in the filing of a chapter 13 petition less meaningful or insufficient in light of the extrinsic circumstances listed in § 362(c)(3)(C)? In the Court's view, the determination of good faith for purposes of § 362(c)(3) is similar to, but not congruent with, the determination of good faith in connection with a motion to dismiss under § 707(b)(3) or § 1307. The differences require that some of the *Sullivan* factors not be considered and require consideration of some additional factors.

 Many of the factors listed in *Sullivan* pertain to a debtor's conduct or behavior after the filing of a petition and the nature of the debtor's debts. The Court believes that the nature of the debts and the question of whether such debts would

be dischargeable in a chapter 7 proceeding are less significant after BAPCPA because of the means test restrictions on qualifying to file under chapter 7 and the reduction in the super discharge formerly available under chapter 13. Furthermore, to the extent that the second *Sullivan* factor looks at how a debtor behaved in the later case or the accuracy of the schedules filed, the second factor is inappropriate for use in testing the good faith in the filing of the later petition.[4] In the Court's view, the second factor should be limited to an examination of a debtor's conduct in the prior case. The determination of good faith under the totality of circumstances test is subjective. However, the provisions of § 362(c)(3)(C)(i)(III) suggest that the good faith contemplated by Congress in § 362(c)(3) includes, in part, an objective test on the likelihood of success in the later case.

 Accordingly, the Court believes that the factors to be considered by the Court in applying the totality of the circumstances test to determine good faith under § 362(c)(3) include: (1) the timing of the filing of the later petition, (2) how the debts in the later case arose, (3) why the debtor's prior case was dismissed, including the debtor's conduct in that case, (4) how the debtor's actions affected creditors who are stayed, (5) the debtor's motive in filing the later petition and whether the Bankruptcy Code is being unfairly manipulated, (6) whether the debtor's circumstances have changed since the prior dismissal and the likelihood that the debtor will be able to properly fund a plan, and (7) whether the case trustee or creditors object to the motion to extend. *See In re Havner*, 336 B.R. 98, 103 (Bankr.M.D.N.C. 2006); *In re Galanis*, 334 B.R. 685, 693

(Bankr.D.Utah 2005). Although the Court has identified various factors which the movant must address in a motion to extend stay under § 362(c)(3)(B), it is important to note that the factors are not necessarily weighed nor are they exhaustive. *Montoya*, 333 B.R. at 458. The bottom line remains whether the debtor is attempting to thwart his creditors or whether he is making an honest effort to repay them to the best of his ability. *Sullivan*, 326 B.R. at 212.

### 4. Clear and Convincing Evidence

 The 2006 Case is presumed not to have been filed in good faith under § 362(c)(3)(C)(ii). Accordingly, the Debtor must rebut the presumption by clear and convincing evidence. 11 U.S.C. § 362(c)(3)(C). The clear and convincing standard of proof is an intermediate standard which lies somewhere below "beyond a reasonable doubt" and somewhere above a "preponderance of the evidence." *In re '639 Patent Litig.*, 154 F.Supp.2d 157, 173 (D.Mass.2001). Former Chief Justice Burger noted the difficulty in defining the standard when he stated: "We probably can assume no more than that the difference between a preponderance of the evidence and proof beyond a reasonable doubt probably is better understood than either of them in relation to the intermediate standard of clear and convincing evidence." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The clear and convincing standard has been defined as the weight of proof that would place in the ultimate fact finder an abiding conviction that the truth of its factual contentions are "highly probable."

---

4. The first and second *Sullivan* factors would still be of significance in considering a motion to dismiss under § 1307(c).

*Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984).[5]

## IV. THE DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY

The Debtor seeks an extension of the stay as to all creditors but in particular as to MERS. As set forth above, the presumption that the 2006 Case was not filed in good faith arises under § 362(c)(3)(C)(ii) as to the three creditors who obtained relief from the automatic stay in the 2005 Case. Only MERS has filed an objection to the Motion.

### A. Rebutting the Presumption of an Absence of Good Faith

 Based on the Court's analysis of § 362(c)(3)(C) above, the first factor to consider in determining whether the 2006 Case was filed in good faith is the timing of the Debtor's petition commencing the 2006 Case. If the Debtor waited for a significant portion of the one year period imposed by § 362(c)(3) with no intention to remain out of bankruptcy and pay creditors, he would be acting in bad faith. The

Debtor filed his petition commencing the 2006 Case forty-seven days after the dismissal of the 2005 Case. The evidence established that during this period he attempted to reach an agreement with MERS regarding the arrearage on the mortgage on his home outside of bankruptcy. During the period of negotiations, MERS commenced and continued a proceeding to foreclose its mortgage under the power of sale provisions of New Hampshire law. On January 24, 2006, the day before the scheduled foreclosure sale, MERS advised the Debtor that it had rejected his final offer. The Debtor then filed his chapter 13 petition on January 25, 2006, to save his home from foreclosure. The Debtor did not wait to see what his creditors would do after dismissal of the 2005 Case. Shortly thereafter the Debtor attempted to reach an agreement with MERS to cure the arrearage on his home mortgage. Only after those efforts failed did he commence the 2006 Case. The Court determines that this factor weighs in the Debtor's favor.

---

**5.** The United States Supreme Court has described the rationale behind the three standards for burden of proof as reflecting public policy judgments on who should bear the risk of error. For example, in the typical civil case the preponderance of the evidence standard reflects a judgment that the litigants share the risk of error in roughly equal fashion. However, in criminal cases the beyond a reasonable doubt standard reflects a judgment that the risk of an erroneous judgment should be eliminated as nearly as possible. The intermediate standard of clear and convincing is applied to cases where the interests at stake are deemed more important than routine civil cases and, therefore, the risk of error should be borne more by the party with the burden of proof. *Addington,* 441 U.S. at 423–24, 99 S.Ct. 1804.

Under BAPCPA, it appears that the interests at stake for mortgagees and automobile lenders are more substantial in a second bankruptcy case, filed within one year, than the

interests at stake in a first case. Their interests in a second case within one year apparently are not sufficiently protected by their rights to adequate protection in the second case pursuant to § 361 of the Bankruptcy Code. After BAPCPA, if the automatic stay against these creditors' pursuit of their property rights in a prior bankruptcy case was terminated, conditioned, or limited in any way, such creditors will have their interests in property raised to the same level as an individual's interest in his liberty at a civil commitment hearing. *See id.* at 425[99 S.Ct. 1804]. Why creditors' interests are entitled to greater protection in the second bankruptcy case, beyond the good faith requirements of § 362(c)(3)(B), is not clear. Why protection of property interests should require the elevated burden of proof applied to the interest in personal liberty is not apparent. The legislative history is silent on Congress's rationale. However, congressional intent in this regard is clear, if not convincing.

The second factor that the Court will consider is how the debts scheduled in the 2006 Case arose. The debts scheduled in the 2006 Case are identical to those in the 2005 Case with two exceptions. A debt owed to a creditor holding an attachment prior to the 2005 Case was avoided under § 522 in that case and is listed for the same amount as an unsecured debt in the 2006 Case. The only new debt reflected in the 2006 Case is an unsecured obligation to the Debtor's bankruptcy counsel. The majority of the Debtor's debts are from credit card obligations incurred in the ordinary and necessary course of living. During 2004 and 2005, the Debtor testified that he was out of work for a significant period of time due to a chronic disease. An examination of the schedules filed in the 2005 Case, commenced on April 20, 2005, and in the 2006 Case, filed nine months later, reflect little change except for the increase in the arrearage on his home mortgage and a new debt to his bankruptcy counsel. The Debtor testified that the loss of income due to his illness made it impossible for him to make the mortgage payments during most of 2005. In other words, the evidence does not reflect any incursion of additional debt since the filing of the 2005 Case. The Court determines that this factor weighs in the Debtor's favor.

The third factor in the Court's consideration is why the 2005 Case was dismissed and the Debtor's conduct in that case. The Debtor testified that the 2005 Case was dismissed because of his inability to make plan payments due to his illness. The Debtor is an independent sales representative who is paid only through commissions. Consequently when he does not work, his commissions diminish to zero. The 2005 Case was dismissed primarily because the Debtor failed to make timely pre-confirmation plan payments to the chapter 13 trustee. The chapter 13 trustee attended the evidentiary hearing on the Motion but did not object to or enter an appearance on the Motion. Accordingly, the Court finds that the reasons for the dismissal of the 2005 Case were related to circumstances beyond the Debtor's control and were not due to his failure to cooperate with the trustee or abide by the orders of this Court. The Court determines that this factor weighs in favor of the Debtor.

The fourth factor to consider is how the Debtor's actions affected creditors who are stayed. The only creditor objecting to the Motion is MERS. The Court notes that the filing of a bankruptcy petition and the imposition of the automatic stay will almost always prejudice creditors. In this case, MERS undoubtedly incurred expenses in connection with the foreclosure sale scheduled for January 25, 2006. However, the Court notes that MERS elected to proceed to incur those expenses while it negotiated with the Debtor. That was MERS' choice. Assuming that MERS was negotiating in good faith, it was a conscious decision on its part. The best the evidence shows on this factor is that it does not weigh against the Debtor.

The fifth factor is the Debtor's motive in filing the petition in 2006 and whether he is manipulating the bankruptcy system. The Debtor testified that he filed the chapter 13 petition on January 25, 2006, to prevent the loss of his home to foreclosure after he was unable to reach an out-of-court agreement with MERS. The Debtor's testimony and the terms of his proposed chapter 13 plan reflect a serious intent to save his home, in which he, his spouse, and three minor children live. The Court is convinced that the Debtor commenced the 2006 Case in order to responsibly address his debts and to protect his home from MERS' foreclosure. It appears that the Debtor owns no non-exempt property. His plan proposes to pay $775 per month for a period of fifty-six months.

Under his proposed plan, the Debtor will pay creditors more than they would receive in a liquidation. The Debtor's household income is less than the median income for a family of five. Accordingly, he could have qualified to file a petition under chapter 7. On cross examination MERS elicited an admission by the Debtor that the first postpetition mortgage payment due on February 1, 2006, which would be late if not paid on or before February 15, 2006, the hearing date, had not been paid. The Debtor testified that he was waiting to make the payment pending the ruling on the Motion. In light of his family responsibilities and his inability to reach an agreement with MERS prior to January 25, 2006, the Court cannot find the Debtor's conduct to be inappropriate. This factor weighs in favor of the Debtor.

The sixth factor is whether the Debtor's circumstances have changed since the dismissal of the 2005 Case and whether he is likely to be able to properly fund his proposed plan. The evidence established that his non-debtor spouse's income has increased since the commencement of the 2005 Case. She is employed by a stable company in Nashua, New Hampshire, with a regular salary with benefits and overtime. The Debtor testified that his doctors are using a new outpatient treatment for his chronic disease, which is expected to prevent the periodic relapses he has experienced in the past two years. Based upon his previous performance when he was working, his performance over the past several months, and consultations with his employer, the Debtor projects that his net income from employment, together with his wife's increased earnings, will enable him to fund his chapter 13 plan. The Debtor's earnings on both a gross and net basis are approximately seventy percent of his household's total earnings. The success of the new treatment regime directed by his physician is obviously the key to the success of the Debtor's chapter 13 plan. While there are no guarantees that any chapter 13 debtor will not experience lost earnings from medical conditions during the term of a five year plan, the Debtor's treatment protocols and his response to those protocols provide as much assurance as any debtor could offer. This factor is at worst neutral and at best weighs in favor of the Debtor.

The final factor is whether the chapter 13 trustee or any creditors object to the Motion. The Debtor filed the Motion and gave notice of the hearing two days after the filing of his petition. The hearing was held nineteen days after notice was given. The only creditor that responded was MERS, who filed an objection eleven days after notice of the hearing and eight days before the hearing. While the time to respond to the Motion was short, the timing is dictated by Congress's requirement that hearings to extend the stay under § 362(c)(3)(B) be concluded within thirty days. The Court finds it significant that the chapter 13 trustee attended the hearing but did not object. MERS based its objection on the fact that the Debtor has made no regular mortgage payments since the middle of 2004. After an out-of-court workout plan was agreed to in September 2004, the Debtor made payments but defaulted in March 2005. The Debtor responds that his payment history is reflective of his losses of income due to his medical condition. The objection by MERS is consistent with its rejection of a workout plan on January 24, 2006, and its view of the Debtor's payment history. If creditors or the chapter 13 trustee supported the Motion, this factor would weigh in favor of the Debtor. In this case, this factor weighs against the Debtor.

The Court finds that based upon the totality of the circumstances the Debtor has presented clear and convincing evi-

dence sufficient to rebut the presumption of § 362(c)(3)(C)(ii) that the petition commencing the 2006 Case was not filed in good faith. The Debtor's commencement of the 2006 Case was an attempt to maximize payments to his creditors and to save his home. The Debtor's new filing is reflective of his improved medical prognosis and increased household income. The Court further finds it highly probable that the Debtor's proposed chapter 13 plan will be confirmed and that he will have sufficient household income to properly fund the plan.

### B. Extension of the Automatic Stay

█ Once a debtor has rebutted the presumption under § 362(c)(3)(C) and established good faith, the Court must proceed to the second stage of ruling on a motion to extend the stay. The Court has the discretion to extend the stay as to any or all creditors, subject to such conditions or limitations as the Court may impose. 11 U.S.C. § 362(c)(3)(B).

█ The primary purpose for the commencement of the 2006 Case by the Debtor was to cure the arrearage on the mortgage loan on his home and avoid the loss of the home through foreclosure. Based upon the reasons for the dismissal of the 2005 Case, the Debtor's conduct after the dismissal in attempting an out-of-court agreement to cure the mortgage arrearage, the changes in the Debtor's economic condition and the good faith found in the commencement of the 2006 Case, the Court shall extend the automatic stay.

The Debtor's chapter 13 plan proposes to make the regular postpetition payments to MERS on his home mortgage outside of the plan and to pay only the prepetition arrearage through the plan. Notwithstanding the improvement in the Debtor's physical and economic health, his history of making timely mortgage payments is problematic. Accordingly, as a condition to the extension of the automatic stay with respect to MERS, the Court shall order the Debtor to make the mortgage payment due February 1, 2006, plus any applicable late fee and real estate tax escrow, on or before March 15, 2006, and to make the mortgage payments, plus any real estate tax escrow, due for the following five months (March through July) on or before the fifteenth day of each month, failing which MERS may obtain relief from the automatic stay by filing an affidavit under the provisions of Local Bankruptcy Rule 9071–1. Because the record does not reflect the current mortgage payment or any applicable real estate tax escrow, MERS shall be ordered to submit to the Court, within seven days, a proposed order detailing the above payments and the address to which such payments should be directed. The Court shall further order that the stay be extended as to all other creditors without further conditions or limitations.

### V. CONCLUSION

For the reasons set forth above, the Court will issue a separate order consistent with this opinion granting the Motion and extending the stay with the conditions described above. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.