**In re Christopher Jerald HAVNER, Debtor.**

No. 05–14505.

United States Bankruptcy Court, M.D. North Carolina.

Jan. 4, 2006.

Wendell Wes Schollander, III, Winston–Salem, NC, for Debtor.

### ORDER DENYING MOTION TO EXTEND AUTOMATIC STAY

THOMAS W. WALDREP, JR., Bankruptcy Judge.

This matter came before the Court for hearing on December 22, 2005 on the Motion by Debtor to Extend the Automatic Stay (the "Motion"), filed by the above-referenced debtor (the "Debtor") on December 8, 2005. At the hearing, Anita Jo Kinlaw Troxler was present in her capacity as the Chapter 13 Trustee, and Wendell W. Schollander appeared on behalf of the Debtor.

Based upon a review of the Motion, the evidence and arguments presented at the hearing, and a review of the entire official file, the Court hereby finds as follows:

### FACTS

On March 8, 2005, the Debtor filed for chapter 13 protection (Case No. 05–10666) in this Court (the "Previous Case"), and the case was assigned to Chief Judge William L. Stocks. Mr. Phillip E. Bolton served as counsel for the Debtor in that case. Judge Stocks confirmed the Debtor's chapter 13 plan on June 10, 2005. The plan required the Debtor to make monthly payments of $600 beginning on April 11, 2005 and increasing to $800 per month in May of 2005. The confirmed plan provided a return to unsecured non-priority cred-

itors of the greater of (a) 25% of their allowed claims or (b) thirty-six monthly plan payments, with the plan to be reviewed periodically for plan payment adjustments. The plan estimated that the return to unsecured non-priority creditors would be 45% of their claims.

The class of secured claims in the Previous Case was comprised of two creditors that were secured by vehicles. The plan proposed to pay $200.00 each month to Americredit, which was secured by the Debtor's 1999 Chevrolet Malibu valued at $2,851.88. With respect to the Americredit claim, the plan provided that the claim would be "paid in full to protect the cosigner."

The plan further proposed to pay $370.00 each month to Regional Acceptance, which was secured by the Debtor's 2000 Chevrolet S–10 truck valued at $6,772.00. The plan provided that the "claim [of Regional Acceptance] shall be classified to be paid in full to protect the cosigner."

There were no unsecured priority creditors listed in the Previous Case, but the Debtor listed a class of eleven unsecured non-priority creditors entitled to claims aggregating $22,523.00.

On October 14, 2005, the Chapter 13 Trustee filed a Motion to Dismiss the Previous Case, asserting that the Debtor was delinquent on his plan payments. The Debtor testified that he was simply unable to pay the $800 per month plan payment. The Debtor did not respond to the Trustee's motion. Judge Stocks issued an order dismissing the Debtor's Previous Case on November 14, 2005.

On December 5, 2005, the Debtor filed this case (the "Present Case"), with new counsel. On December 8, 2005, the Debtor filed the present motion to continue the automatic stay.

The class of secured claims in the Present Case consists of three creditors. Americredit is secured by the Debtor's 1999 Chevrolet Malibu, which is now valued at $3,575.00, an increase from the $2,851.88 value in the Previous Case. Regional Acceptance is secured by the Debtor's 2000 Chevrolet S–10 truck, which is valued at $6,700.00, a slight decrease from the $6,772.00 value in the Previous Case. Friedman's Jewelers, which was listed as an unsecured creditor owed $5,700.00 in the Previous Case, is now listed as being owed $1,188.00 and secured by a bracelet and chain valued at $500.00. Schedule B in the Present Case also lists a 1977 Pontiac Firebird, valued at $800.00, which the Debtor did not list in his Previous Case.

In the Present Case, the Debtor again lists no unsecured priority creditors, but he does list twelve non-priority unsecured claims aggregating $16,185.00. Although the Debtor has one more unsecured non-priority creditor than in the Previous Case, the total amount of unsecured debt has decreased by $6,338. This change is primarily due to (a) the elimination of Friedman's Jewelers as an unsecured creditor (as noted above), (b) a reduction in the amount owed to Premier Federal Credit Union from $10,000.00 to $4,111.00, and (c) the addition of a new unsecured creditor, Cavalry Portfolio Services, which is owed $4,358.00. These changes were not explained at the hearing.

At the hearing on the Motion, the Debtor testified that his income and expenses have not changed. This testimony is contradicted by the Debtor's schedules. In the Previous Case, the Debtor's Schedule I indicated that his net monthly income was $1,800.00 and that of his non-filing spouse was $2,400.00, for a total of $4,200.00. In the Previous Case, the total expenses for the Debtor's household were $2,885, which left the Debtor with a $1,315 surplus each

month. However, in the Present Case, the Debtor's Schedule I indicates that his net monthly income is $1,230.00 and that of his non-filing spouse is $2,741.05, for a total of $3,971.05. In the Present Case, the total expenses for the Debtor's household are $3,544.00, which leaves the Debtor with only a $427.05 surplus each month.

The Debtor testified that there would be two major differences between the plan that was confirmed in his Previous Case and the plan that he would propose in the Present Case. First, the plan in his Previous Case provided for a 25% dividend to unsecured non-priority creditors, which required a monthly payment of $800.00, but his new plan would propose a 10% dividend for unsecured non-priority creditors, which would require a monthly payment of only $475.00. Second, the new plan will no longer propose full monthly payments to creditors secured by vehicles, which was done in the Previous Case to protect the credit rating of the Debtor's non-filing spouse. Instead, the plan in the Present Case will propose to pay both vehicle debts in full over time at the contract rate of interest, but the monthly payments will be less than the contractual amounts. Therefore, the Debtor argues, the creditors secured by the vehicles will not be prejudiced by the extension of the automatic stay. The Debtor requested that the automatic stay continue in effect as to all creditors.

### DISCUSSION

### I. JURISDICTION AND VENUE

Jurisdiction in this case is proper pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is appropriate under 28 U.S.C. § 1409(a).

### II. STANDARD OF PROOF

■ If an individual debtor had another bankruptcy case pending within one year of the present case, then Section 362(c)(3)(A) provides that the automatic stay terminates "with respect to the debtor" thirty days after filing. However, Section 362(c)(3)(B) provides for a continuation of the stay beyond the initial 30–day period if four requirements are met: (1) a motion is filed; (2) there is notice and a hearing; (3) the notice and hearing are completed before the expiration of the original 30–day period; and (4) the debtor proves that the filing of the new case "is in good faith as to the creditors to be stayed." *In re Collins,* 335 B.R. 646, 650, 2005 WL 3529144, at *2 (Bankr.S.D.Tex. 2005).

■ Pursuant to Section 362(c)(3)(C), a presumption arises that the present case was not filed in good faith as to all creditors if–

(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1–year period;

(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1–year period, after the debtor failed to–

(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

(bb) provide adequate protection as ordered by the court; or

(cc) perform the terms of a plan confirmed by the court;

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded–

(aa) if a case under chapter 7, with a discharge; or

(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed . . .

If such a presumption arises, then the moving party must carry its burden by clear and convincing evidence. 11 U.S.C. § 362(c)(3). If the presumption does not arise, then the moving party must carry its burden under Section 363(b)(3)(B) by a preponderance of the evidence. *In re Galanis*, 334 B.R. 685, 698 (Bankr.D.Utah 2005).

The Previous Case was pending within one year prior to the Present Case. In addition, the Previous Case was dismissed because the Debtor failed to comply with his confirmed plan. Finally, there has been no substantial positive change in the financial or personal affairs of the Debtor since the dismissal of the Previous Case, and there is no reason to conclude that the Present Case will be concluded with a confirmed chapter 13 plan that is fully performed. Thus, the Debtor meets the requirements of all three subsections of Section 362(c)(3)(C), only one of which is necessary to cause the presumption to arise. Accordingly, the Debtor must carry his burden under Section 362(c)(3)(B) by clear and convincing evidence.

## III. DETERMINING GOOD FAITH UNDER 362(c)(3)(B)

The Bankruptcy Code does not explain what a moving party under Section 363(c)(3)(B) must show in order to demonstrate that a case is filed in good faith. For purposes of Section 363(c)(3)(B), this Court adopts the analysis of *In re Montoya*, 333 B.R. 449 (Bankr.D.Utah 2005), and *In re Galanis*, 334 B.R. 685, 696–97 (Bankr.D.Utah 2005). Following *Montoya*, the *Galanis* court examined the totality of the circumstances test developed by the Tenth Circuit Court of Appeals in *In re Gier*, 986 F.2d 1326 (10th Cir.1993); this test was developed for the purpose of determining whether a chapter 13 case should be dismissed or converted for lack of good faith under Section 1307(c). *Galanis*, 334 B.R. at 690. After a thorough analysis of the *Gier* factors, both the *Montoya* and the *Galanis* courts noted that the focus of Section 362(c)(3)(B) was somewhat different than that of Section 1307(c) and determined that certain *Gier* factors may not be valid under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The *Galanis* court concluded its analysis as follows:

In contemplating the totality of the circumstances analysis, the Court determines that it should consider a few additional factors, not contemplated by *Gier*.

In sum, the Court believes the following factors are relevant to the analysis of good faith under 362(c)(3)(B): 1) the timing of the petition; 2) how the debt(s) arose; 3) the debtor's motive in filing the petition; 4) how the debtor's actions affected creditors; 5) why the debtor's prior case was dismissed; 6) the likelihood that the debtor will have a steady income throughout the bankruptcy case, and will be able to properly fund a plan; and 7) whether the Trustee or creditors object to the debtor's motion.

*Galanis*, 334 B.R. 685, 693 (footnote omitted). A totality of the circumstances test has also been adopted by the Fourth Circuit Court of Appeals for the purpose of deciding whether a chapter 13 case has been filed in good faith. *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir.1986); *see also In re Herndon*, 218 B.R. 821 (Bankr.E.D.Va.1998)(citing *Gier* factors). This Court will use a totality of the circumstances test for the purpose of determining whether a case is filed in good faith for purposes of Section 362(c)(3)(B) and

will examine the factors developed by *Gier* and modified by *Galanis* in order to apply the test.

▇▇▇ The first factor to consider in the Court's analysis is the timing of the Debtor's petition. If the Debtor had waited before refiling, with no intention of staying out of bankruptcy, that would have been evidence of bad faith. Since creditors often incur substantial costs in trying to enforce their rights and collect the debts owed to them, if a debtor who could not pay caused such debts to accumulate, then that debtor would be acting in bad faith. The Present Case was filed only twenty-one days after the Previous Case was dismissed. The Debtor took affirmative action to address his debts. The Court determines that this factor weighs in favor of granting the Debtor's Motion.

▇▇▇ The second factor to consider is how the debts at issue arose. This factor looks primarily to whether the debts arose from luxury spending, from reoccurring expenses, or whether they were the result of unavoidable costs, such as medical bills. *Galanis*, 334 B.R. 685, 2005 WL 3454411 at *23–24. The majority of the debts in the Previous Case and the Present Case appear to be for recurring personal and business purchases. Although the total amount of unsecured debt decreased in the Present Case, the decrease is due to substantial and unexplained differences in the amounts owed to two unsecured creditors and the reclassification of an unsecured claim to a partially secured claim. This factor weighs against the granting of the Debtor's Motion.

The third factor to consider is the Debtor's motive in filing the Present Case. This is a wholly subjective inquiry, but nonetheless relevant. *Montoya*, 333 B.R. at 460–61. Based on the Debtor's testimony, the Court is convinced that his motive in filing the Present Case was to responsibly address his debts and to pay as much of them as possible. This factor weighs in favor of granting the Debtor's Motion.

The fourth factor to consider is how the Debtor's actions affected creditors. Filing for bankruptcy relief will almost always prejudice the debtor's creditors. *Galanis*, 334 B.R. at 695–96. However, in the Present Case, there are depreciating assets at issue—two vehicles securing two creditors. These creditors are prevented from exercising their rights while their collateral depreciates. This factor weighs against granting the Debtor's Motion.

▇▇▇ The fifth factor to consider is why the Debtors' Previous Case was dismissed. If the Previous Case was dismissed for the Debtor's attempts to manipulate the system or some other bad conduct, that would bear on whether the Present Case was not filed in good faith. *Galanis*, 334 B.R. at 695–96. The Previous Case was dismissed for the Debtor's failure to make timely plan payments, and the Debtor made no attempt to cure the delinquency. This factor weighs against granting the Debtor's Motion.

The sixth factor requires the Court to consider the likelihood, at the time of the filing of the Present Case, that the Debtor could properly fund and maintain a chapter 13 plan. In the Previous Case, the Debtor's schedules indicated that the Debtor had $1,315 left over at the end of each month with which to pay creditors. The Debtor failed to make plan payments of $800.00 per month. In the Present Case, the Debtor's schedules indicate that the Debtor has only $427.05 left over each month with which to pay creditors. Even with a proposed plan payment of $475.00 per month,[1] the Court is left with little

---

1. The Debtor argued that the enactment of BAPCPA allowed him to propose a lower divi-

confidence, given the Debtor's performance in the recent past, that the Debtor will be able to fund a maintain a chapter 13 plan. There is little question that the Debtor has failed to establish feasibility with clear and convincing evidence. This factor weighs heavily against granting the Debtor's Motion.

The seventh factor to consider is whether the Trustee or any creditor objects to the Debtor's Motion. In this case, neither the Trustee nor any creditors objected to the Debtor's motion, although the Trustee seemed to endorse the Motion with some misgivings. This factor weighs in favor of granting the Debtor's Motion.

▮ In an analysis of good faith, "[n]o one factor is determinative. Instead, under this test, a court should consider how the factors operate together in order to determine the existence of good faith." *In re Charles,* 334 B.R. 207, 223 (Bankr. S.D.Tex.2005). The Court does not merely count the factors weighing in favor of and against a subject good faith finding. Rather, the Court considered the factors based on the "totality of the circumstances." *Charles,* 334 B.R. at 223.

In light of the above analysis, the Court determines that under a totality of the circumstances analysis the Debtor has failed to carry his burden to show by clear and convincing evidence that he filed the Present Case in good faith.

### CONCLUSION

The Debtor did not file the Present Case in good faith as to all creditors, and the automatic stay shall not be extended.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.

### ORDER DENYING MOTION TO EXTEND AUTOMATIC STAY

Pursuant to the memorandum opinion entered contemporaneously herewith, it is ORDERED that the Motion to Extend the Automatic Stay is hereby Denied.

dend plan in the Present Case, which plan was more affordable for him and therefore feasible. The Debtor also argued that his decision to make lower monthly payments to creditors secured by vehicles also helped to make the plan feasible. The Court not need decide whether changes in the law, such as

the enactment of BAPCPA, may constitute changes in a debtor's personal or financial circumstances for purposes of Section 362(c)(3)(C)(i)(III). Even giving the Debtor the benefit of the doubt, the Present Case was not filed in good faith under Section 362(c)(3).