**In re Michael J. HURT, Debtor.**

**No. 06–71167.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

May 11, 2007.

---

Bryan James Palmer, Michael D. Hart PC, Roanoke, VA, for Debtor.

## DECISION AND ORDER

ROSS W. KRUMM, U.S. Bankruptcy Judge.

At Roanoke in said District this 11th day of May 2007:

The matter before the court is the Debtor's Motion to Impose the Automatic Stay pursuant to 11 U.S.C. § 362(c)(4). The court conducted a hearing on the Motion in Roanoke on October 18, 2006. At that time, the court took the matter under advisement and requested that the Debtor submit a memorandum of authorities in support of the Motion. After due consideration of the evidence and authorities and for the reasons stated here, the Motion is granted.

## BACKGROUND

The Debtor filed a petition under Chapter 13 of the Bankruptcy Code on October 9, 2006. His schedules reflect $27,600 in assets, of which none relates to real property. The Debtor's total liabilities are $100,955.45, of which $4,841.77 relates to a secured claim on Debtor's 2000 Nissan Maxima. The remaining liabilities consist of unsecured nonpriority claims, comprised of credit card claims totaling $87,613.53, claims for payday loans totaling $5,175, a claim for an installment loan of $1,643, 44, and one claim filed by a debt management company for $1,506.24. Schedule I reflects $3,456.09 in total monthly income from Debtor's work as a machine operator and no other source of income. Schedule J reflects $2,731.09 in total projected monthly expenses.[1]

The Debtor filed two prior Chapter 13 petitions with this court, both of which were pending within the year preceding the filing of the present case.[2] Both cases were dismissed because Debtor was unable to make plan payments in accordance with the respective Chapter 13 plans. Debtor filed the first petition on November 5, 2003 and the case was dismissed on Debtor's Motion on March 27, 2006 (Case No. 03–04725). His schedules reflected $28,500 in assets, of which none related to real property. The Debtor's total liabilities were $30,615.92, of which $15,300 related to a secured claim on Debtor's 2000 Nissan Maxima. The remaining liabilities consisted of unsecured nonpriority claims, comprised of three credit card claims totaling $12,600 and one claim for an installment

---

1. The expenses listed includes, among other things, $650 for rent, $483 for food, $217 for clothing, $50 for medical and dental expenses, $200 for charitable contributions, and $100 for automobile insurance.

2. Court records indicate the Debtor has filed three bankruptcies, all of which are referred to in this opinion. The court has access the court's records concerning the prior filings of bankruptcy by this Debtor as well as the current filing and takes judicial notice of the records.

loan of $2,715.92. Schedule I reflected $2,886.40 in total monthly income, of which $700 was income from a second job. Schedule J reflected $2,438.26 in total projected monthly expenses.[3]

Debtor filed the second petition on March 29, 2006 and the case was dismissed on Trustee's Motion on September 14, 2006 (Case No. 06–70250).[4] The schedules reflected $27,600 in assets, of which none related to real property. The Debtor's total liabilities were $99,021.38, of which $4,606.85 related to a secured claim on Debtor's 2000 Nissan Maxima. The remaining liabilities consisted of unsecured nonpriority claims, comprised of credit card claims totaling $87,513.53, claims for payday loans totaling $5,175 and one installment loan claim of $1,726.00. Schedule I reflected $3,452.38 in total monthly income, of which $800 was income from a second job. Schedule J reflected $2,502.38 in total projected monthly expenses.[5]

Because the Debtor had two cases pending within the year preceding this case, the automatic stay did not go into effect when he filed this case. 11 U.S.C. § 362(c)(4)(A)(i). On October 12, 2006, the Debtor filed a Motion to Impose the Automatic Stay as to all creditors in this case. *See* 11 U.S.C. § 362(c)(4)(B). The court conducted a hearing on the Motion on October 18, 2006.[6]

At the hearing, the Debtor explained that he was unable to make plan payments in both prior cases because his income was reduced due to health related problems, including being out of work for two months, an increase in rent, and unexpected automobile troubles. Debtor explained that these problems resulted in the incurrence of greater debt as well as his inability to make plan payments and that these were issues during the course of each prior case. Debtor stated that, since the filing of the second case, he has taken the steps to overcome his health problems by quitting his second job at the suggestion of his doctor. Debtor does not believe his health or automobile problems will recur. Debtor believes that the reduction in monthly health expenses will permit Debtor to avoid incurring medical related debt and allow Debtor to more easily make plan payments, because the reduction in medical expenses will outweigh any reduction in Debtor's income. Debtor offered no evidence as to the cost of his health related problems or the cost of his automobile repairs. No claims filed in any of the three cases directly reflect medical or automobile costs.

Neither the Trustee nor any creditor objected to Debtor's Motion to Impose the Automatic Stay.

## DISCUSSION

If a joint Debtor had two bankruptcy cases pending within one year of the

---

3. The expenses listed included, among other things, $650 for rent, $300 for food, $50 for clothing, $50 for medical and dental expenses, $50 for charitable contributions, and $75 for automobile insurance.

4. The Debtor filed an amended Chapter 13 plan on May 31, 2006 in the second case. This was the Debtor's only plan. Under the plan, the Debtor proposed to pay $1,747.00 per month for sixty months. The plan stated unsecured creditors would be paid 92% of their claims, compared to 0.00% if the case were liquidated under Chapter 7.

5. The expenses listed included, among other things, $600 for rent, $250 for food, $50 for clothing, $50 for medical and dental expenses, $300 for charitable contributions, and $100 for automobile insurance.

6. The hearing was originally scheduled for October 17, 2006, but was continued to October 18, 2006. *See* Docket Entry Nos. 14 and 15.

present case, Section 362(c)(4)(A)(i) provides that the automatic stay shall not go into effect upon the filing of the present case. However, Section 362(c)(4)(B) provides for the imposition of the stay if, within 30 days after filing the present case, the Debtor file a motion seeking imposition of the stay, there is notice and a hearing, and the Debtor demonstrate that the present case is filed "in good faith as to the creditors to be stayed." *Id.*

Section 362(c)(4)(D) also provides:

For the purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—

(I) as to all creditors if—

(I) 2 or more previous cases under this title in which the individual was a debtor were pending within the 1–year period;

(II) a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to

perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed ...

11 U.S.C. § 364(c)(4)(D).

The Debtor' two previous cases were pending within one year prior to the present case. In addition, the next most previous case was dismissed because the Debtor failed to comply with his confirmed plan. Therefore, the Debtor meets the criteria of subsections (I) and (II) above and a presumption arises that the Debtor did not file the present case in good faith.[7]

The presumption that the Debtor did not file the present case in good faith may only be rebutted by clear and convincing evidence. 11 U.S.C. § 362(c)(4)(D). Only after the presumption is rebutted may the bankruptcy court impose the automatic stay. *Id.* The Bankruptcy Code does not provide guidance on the facts which the Debtor must prove to overcome the presumption. However, a presumption that a case is not filed in good faith also arises under Section 362(c)(3). Both sections create a presumption of lack of good faith and require Debtor to rebut it by clear and convincing evidence.[8] *Compare* 11 U.S.C.

---

**7.** Only one of the three criteria in § 362(c)(4)(D) is necessary to trigger the presumption.

**8.** In 1991, the Fourth Circuit addressed the "clear and convincing evidence" burden, along with various other burdens in *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802 (4th Cir.1991). Citing the Supreme Court, the Fourth Circuit wrote:

"[C]lear and convincing" is a well-recognized standard in the proof scheme employed by our nation's courts. In *Addington v. Texas,* the Supreme Court identified the "three standards or levels for different types of cases" as follows: "preponderance of the evidence" is the lowest level of proof, and is to be applied in the "typical civil case involving a monetary dispute"; "beyond reasonable doubt" is the highest level of proof, and is to be applied "in a criminal

§ 362(c)(3)(C) and 11 U.S.C. § 362(c)(4)(D). Courts have analyzed the factors relevant to the analysis of good faith under Section 362(c)(3) and because of the similarity between §§ 362(c)(3) and (c)(4), decisions under § 362(c)(3) are helpful. *See, e.g., In re Mark,* 336 B.R. 260 (Bankr.Md.2006) (analyzing factors relevant to the analysis of good faith under Section 362(c)(3)).

In *Mark,* 336 B.R. at 266–68, the bankruptcy court utilized the totality of the circumstances analysis enumerated in *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986) to measure good faith. In *Neufeld,* the Fourth Circuit considered the elements of good faith necessary to the confirmation of a Chapter 13 plan.[9] These factors included, among other things, employment history, the nature and amount of unsecured claims, past bankruptcy filings, honesty in representing the facts, any unusual or exceptional circumstances facing the debtor, and the motivation in filing the current case. *Neufeld,* 794 F.2d at 152. *Neufeld* holds that prepetition conduct is a criteria for good faith and reinforced its decision in *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982), that prepetition conduct of the debtor is an element of good faith. 794 F.2d at 152. According to *Neufeld,* the ultimate purpose of the good faith inquiry is to "determine whether, considering 'all militating factors,' there has been 'an abuse of the provisions, purpose, or spirit' of Chapter 13 in the propos-

al or plan.'" *Id.* at 152 (quoting *Deans v. O'Donnell,* 692 F.2d at 972).

■ The court in *Mark,* 336 B.R. at 267–68, also utilized the analysis of *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir. 1989), which explored the requirement of good faith in the context of a motion to dismiss a Chapter 11 case brought under Section 1112(b). Although not specifically expressed in the Bankruptcy Code, the Fourth Circuit adopted a good faith filing requirement which "prevents abuse of the bankruptcy process" and "protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those Debtor and creditors with 'clean hands.'" 886 F.2d at 698 (quoting *In re Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir. 1986)). *Carolin Corp.* holds that a creditor seeking to dismiss a Chapter 11 case for bad faith must prove that objective futility and subjective bad faith were present at the filing. *Id.* at 701. Unlike Carolin Corp., the burden under Section 362(c)(4) does not rest on the party seeking dismissal as it does in Section 1112(b), but on the party seeking imposition of the stay. Therefore, the movant must prove that objective futility and subjective bad faith were *not* present at the filing of the current case.

■ Like *Neufeld,* *Carolin* also adopted a totality of the circumstances

case"; and "clear and convincing" is an "intermediate standard," which is to be applied in cases where the interests at stake "are deemed to be more substantial than mere loss of money." This intermediate level of proof, the Supreme Court added, is "no stranger in the civil law." A relevant treatise, for example, defines "clear and convincing" as meaning "highly probable." 9 J. Wigmore Evidence § 2498 (3d ed.1940).

*Direx,* 952 F.2d at 810 n. 7 (citing *Addington v. Texas,* 441 U.S. 418, 423–5, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)).

**9.** In *Neufeld* a creditor objected to confirmation, alleging lack of good faith "pointing particularly to the debtor's conduct giving rise to Neufeld's claim and to her prior bankruptcy filings." 794 F.2d at 151.

test. 886 F.2d at 701. As to the objective futility component, the court reasoned that the scope of the inquiry is to determine whether there is any "hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id.* at 701–02 (quoting *In re Little Creek Development Co.*, 779 F.2d at 1073). As to the subjective inquiry into bad faith, the court stated that the "aim is to determine whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or delay to creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without intent or ability to reorganize his financial activities.'" *Id.* (quoting *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. BAP 1983)).

█ In applying the *Neufeld* and *Carolin* standards to this case, the court first looks at the proposed Chapter 13 plan. While "failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts, ... substantiality of proposed repayment is but one factor to be considered in deciding if a plan has been proposed in good faith; a court must make its determination based on all militating factors." *Id.* at 972. A small payout to general unsecured creditors may provide evidence of a Chapter 13 debtor's "unfair manipulation" of the Bankruptcy Code. *See In re Wilcox*, 251 B.R. 59, 68 (Bankr. E.D.Ark.2000). However, a plan that proposes a low percentage payout to unsecured creditors is not, by itself, sufficient justification for a finding of bad faith. *In re Chaffin*, 816 F.2d 1070, 1073–74 (5th Cir.1987), *reh'g*, 836 F.2d 215 (5th Cir. 1988) (citing *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983)).

█ Here, Debtor proposes to pay into the plan $500 per month for two months and then $725 per month for 58 months, which is equivalent to a 33% dividend to unsecured creditors. A 33% dividend cannot be characterized as such a low payout so as to find that a debtor fails to rebut the presumption under Section 362(c)(4). *Deans*, 692 F.2d at 972.

█ The next factor to consider is nature and amount of unsecured claims. *Neufeld*, 794 F.2d at 152. The majority of debt in this case is credit card and pay day loan debt. The Debtor's unsecured debts in this case are approximately $2,000 more than those scheduled in the second case and approximately $80,000 more than those schedule in the first case. At the hearing in this case, Debtor explained that missing for two months, medical costs and automobile repair costs led him to incur this additional debt. Aside from his own testimony, the Debtor offered no evidence to support his claims that he utilized his credit cards and pay day loans to support him during his two months out of work or to pay his medical and car repair bills. Debtor offered no evidence as to the actual cost of his medical or car problems.

The court next looks to the past filings of the Debtor. In the past year, the Debtor had two cases pending, both of which were dismissed for the failure of the Debtor to remain current on his plan payments. According to the Debtor, he fell into default in both cases because his income was reduced due to health related problems, including being out of work for two months, an increase in rent, and an unexpected need for automobile repairs.[10] As indicated above, the Debtor offered no evi-

---

10. It is also important to note that in this case, unlike *Neufeld*, there is no assertion that the Debtor are seeking to use Chapter 13 to discharge debts which would not be dischargeable in Chapter 7.

dence, even in the form of testimony, to show the extent to which these troubles affected his income. The additional $80,000 in credit card debt incurred by the Debtor during the course of the first case suggests that the Debtor may have utilized his credit cards to pay for his medical costs. If so, the additional minimum payments due on such a balance may have then prevented the Debtor from being able to make his plan payments, thus causing Debtor to seek dismissal and to subsequently refile to address these debts. The opposite may then be true as to the second case. That is, Debtor, instead of incurring additional debt, may have chosen to pay for his medical care and car repairs in cash, thus preventing the Debtor from having enough cash to make plan payments. The court, however, can only speculate as to how and to what extent these medical and car problems affected Debtor's ability to make plan payments.

■ The court next examines the Debtor's financial situation, including the Debtor's employment history and prospectus. In applying the objective futility test of *Carolin Corp.* to this case, it is clear that the Debtor's situation would be objectively futile if the circumstances which caused the Debtor to default on his previous plans had not changed. The Debtor has testified that he believes his medical and vehicle problems are now behind him. The Debtor testified that he quit his second job on the advice of his doctor who believed the added stress of working a

second job caused his medical problems. After examining the record of the two prior cases and this case, the court takes judicial notice of the fact that the Debtor's current schedules lists no income from a second job, whereas the schedules from his prior two cases indicate income from a second job. This fact supports Debtor's assertion that he quit the second job in order to reduce his chances of future medical problems, although Debtor's testimony did not make clear to the court the cost of the Debtor's medical problems or if he quit his second job during or after the pendency of the second case.[11] Additionally, the Debtor's total monthly income remains virtually unchanged since his most recent prior filing, although his monthly expenses have increased much more significantly, leaving the Debtor with $225.00 less per month to fund a plan.[12]

■ The court must also examine the prepetition conduct of the Debtor. *Neufeld,* 794 F.2d at 152. The Debtor filed this case on October 29, 2006, twenty-five days after the dismissal of second case. The delay in filing, as evidenced by the Debtor's testimony, may have occurred because the Debtor took the time to analyze his ability to address his debts outside of bankruptcy given his most current financial situation, which includes the Debtor quitting his second job, yet, as indicated above, no evidence indicates when Debtor quit his second job. The Debtor also indicated in his testimony that the he filed this case in order to address his income in a

---

11. If the Debtor quit his second job during the pendency of the second case, then Debtor's inability to make plan payments during the second case would require Debtor to explain why this failed to enable Debtor to make these payments and why, then, not working the second job would benefit the Debtor in this case.

12. Debtor's total monthly income increased by $3.71 between his most recent prior case and this case, yet his monthly expenses increased by $228.71. Notably, the medical and dental expense has remained the same.

responsible manner and do so within the confines of bankruptcy.

Finally, the court notes that the Debtor achieved a confirmed Chapter 13 Plan. *See* Docket Entry # 42. This fact would indicate that the effort to reorganize is not objectively futile. Further, on balance, there does not appear to be an abuse of the bankruptcy process such that the court can find subjective bad faith.

## CONCLUSION

In considering the totality of the circumstances in the case at bar, this court finds that the evidence is sufficient to rebut the presumption of bad faith in § 362(c)(4) and that grounds for imposition of the automatic stay as to all creditors exist.[13] Accordingly, it is

## ORDERED:

That the motion to impose the automatic stay of 11 U.S.C. § 362(a) is GRANTED.[14]

---

13. The court is aware that some courts analyzing good faith under 11 U.S.C. § 362(c)(3) have utilized a seven factor totality of the circumstances test. *See In re Havner*, 336 B.R. 98, 103–04 (Bankr.M.D.N.C.2006) (quoting *In re Galanis*, 334 B.R. 685, 693 (Bankr. D.Utah 2005)). The seven factors utilized to analyze good faith under Section 362(c)(3)(B) are as follows: 1) the timing of the petition; 2) how the debt(s) arose; 3) the debtor's motive in filing the petition; 4) how the debtor's actions affected creditors; 5) why the debtor's prior case was dismissed; 6) the likelihood

that the debtor will have a steady income throughout the bankruptcy case, and will be able to properly fund a plan; and 7) whether the Trustee or creditors object to the debtor's motion. *Havner*, 336 B.R. at 103. Application of the seven factor *Galanis* test to the facts in the case at bar would not change the result.

14. Given the confirmed plan, Section 1327(a) binds the debtor and creditors.